## Turner v. Commonwealth.

(Decided April 27, 1937.)

HECTOR JOHNSON for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This is a companion case to Estill Turner v. Com., 268 Ky. 311, 104 S. W. (2d) 1085, this day decided.

The appellant, Moody Turner, and his brother, Estill Turner, were jointly indicted for the murder of Malcolm Spivey, and, upon his separate trial, appellant was convicted of the crime of manslaughter and sentenced to imprisonment for a term of fifteen years. He seeks a reversal of the judgment because (1) incompetent evidence was admitted over his objection; and (2) the circuit court was without jurisdiction to try him, since he was under seventeen years of age, and the procedure prescribed by section 331e-1 et seq. of the Kentucky Statutes, for the disposition of juvenile offenders, had not been followed. The incompetent evidence of which complaint is made consisted of statements made by the deceased which were admitted as dying declarations.

The killing occurred May 24, 1936, about 1 o'clock in the afternoon. The Turners and Spivey were neighbors, and, according to the record, their relations had been friendly prior to the day of the homicide. About 10 o'clock in the morning, the appellant, his brother Estill Turner, Malcolm Spivey, and two Powell boys met in the road near the Turner and Spivey homes. Estill Turner and the deceased left the crowd, and walked down the road together. When they were again seen, Turner was very drunk and the evidence tends to show that the deceased was also intoxicated. They appeared at the home of Charlie Kirby between 12 and 1 o'clock, and had a slight difficulty there over a bottle of whisky. They left together, apparently on friendly terms, and in a few minutes met appellant and Robert Kirby. A quarrel between appellant and deceased ensued. According to the testimony of Robert Kirby, Estill Turner asked Spivey to put down a rock which he had in his hand, and when he refused started toward him as if he intended to take it away from him, but staggered and

fell. Spivey struck Estill Turner on the head with the rock, while Turner was on the ground, and turned and started running. Appellant drew a pistol and shot Spivey in the back. The bullet entered his body near the middle of his back and passed out about one inch below his navel. Spivey was taken to the hospital in Berea, where he died a few hours later. Shortly after the shooting, Melvin Spivey and Nannie Spivey, father and grandmother, respectively, of the deceased, appeared on the scene, and both of them testified that the deceased stated then, and later at the hospital, that appellant shot him in the back when he was running. Appellant attempted to establish a case of self-defense by stating that he shot the deceased after the latter had struck Estill Turner with a rock and had turned, intending, as appellant believed, to pick up another rock. The court properly instructed the jury as to the right of appellant to shoot the deceased in defense of himself or his brother.

It is argued in the brief for appellant that the trial court erred in overruling his motion for a directed verdict, but this argument is made apparently upon the theory that the testimony concerning the dying statements of the deceased should have been excluded. If that testimony is excluded, there is ample evidence to support the commonwealth's theory of the case and to sustain the verdict. It is claimed that the statements of the deceased are not competent as dying declarations, since it does not appear they were made under a sense of impending death. Several witnesses, including two or three introduced by appellant, testified that the deceased stated that he had been killed and requested that he be buried by the side of his mother. Such statements, coupled with the serious nature of the wound, indicated that the deceased was fully aware of his condition and was without hope of recovery. It is true that he expressed a desire to be taken to the hospital, but this does not negative the inference that he was laboring under a sense of impending death. As was said by this court in Walls v. Com., 257 Ky. 478, 78 S. W. (2d) 322, 323, when speaking of statements admitted as dying declarations:

"These statements were not rendered inadmissible by showing Stevens asked for a doctor and to be taken to a hospital; a man may make such requests

in the hope of obtaining some relief from suffering.''

The following order of the juvenile court was introduced in evidence:

"The defendant being before the Court and waiving an examining trial it is ordered by the Court that the case be prosecuted under the general laws applicable to Juvenile offenders. It is further ordered by the Court that the defendant be and is hereby required to execute bond for his appearance at the August Term of the Jackson Circuit Court, to answer said charge in the sum of $5,000.00. This June 16th, 1936. R. H. Johnson, J. J. C. J. C."

A deputy sheriff testified that on the morning before the hearing in the juvenile court he served notices of the hearing on appellant's parents, and the proof shows that appellant's father and mother were present at the hearing. The evidence was sufficient to show that the procedure prescribed by section 331e-5 of the Kentucky Statutes was complied with, and that the circuit court acquired jurisdiction to try appellant. Tipton v. Com., 221 Ky. 363, 298 S. W. 990; Newsome .v Com., 227 Ky. 710, 13 S. W. (2d) 1046.

The judgment is affirmed.